UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARL JACKSON,

      Plaintiff,

vs.                                   Case No. 8:04-CV-1648-T-27MSS

CHRISTOPHER KNIGHT, et al.,

      Defendants.
_____/

## ORDER

**BEFORE THE COURT** are: (1) Defendants Thomas Knight's and Christopher Wells' Motion for Summary Judgment (Dkt. 118), to which Plaintiff has responded in opposition (Dkts. 145, 146, 169); (2) Defendant Bennie Holder's Motion for Summary Judgment (Dkt. 120), to which Plaintiff has responded in opposition (Dkts. 142, 143); (3) Defendant Joan Pizzuro's Motion for Summary Judgment (Dkt. 123), to which Plaintiff has responded in opposition (Dkt. 114); (4) Defendant Brandi Spahr's Motion for Summary Judgment (Dkt. 124), to which Plaintiff has responded in opposition (Dkt. 148); (5) Plaintiff's Motion for Summary Judgment (Dkt. 129), to which Defendants Holder, Spahr, Pizzuro, Knight, and Wells have responded in opposition (Dkt. 131, 133, 136, 138);[1] and Defendant Pizzuro's Motion for Rule 11 Sanctions (Dkt. 153), to which Plaintiff has responded in opposition (Dkt. 167).

---

[1] The final remaining defendant, Louis Porcaro, has not filed a motion for summary judgment, nor does he respond to Plaintiff's motion for summary judgment. Plaintiff has filed an "Affidavit of Plaintiff Carl Jackson Re: Defendant Luis Porcaro." (Dkt. 147), which will be considered in ruling on the above motions.

1

As the Court concludes that this lawsuit is frivolous, without any factual substantiation whatsoever, Defendants' motions for summary judgment are GRANTED. Moreover, the action as against Louis Porcaro is dismissed, as there are no facts supporting any claim against him.

### *Background*

*Pro se* Plaintiff, Carl Jackson, brought this action against numerous defendants, including Bennie Holder ("Holder"), Thomas Knight ("Knight"), Chris Wells ("Wells"), Brandi Spahr ("Spahr"), Joan Pizzurro ("Pizzurro"), and Louis Porcaro ("Porcaro"), alleging numerous constitutional violations and conspiracy to commit these violations pursuant to 42 U.S.C. § 1983. (Dkt. 9, Am. Compl.). Holder, former Chief of Police of the Tampa Police Department, Wells, a Trooper with the Florida Highway Patrol ("FHP"), and Knight, also a Trooper with the FHP, are sued in their individual capacities. (Dkt. 9, ¶¶ 5-6, 8- 9). Spahr, Pizzurro and Porcaro are private citizens. (Dkt. 9, ¶¶ 16-17).

Plaintiff alleges that the Defendants conspired to stage a car accident that took place on June 12, 2003 which resulted in the destruction of his car and its removal to a junkyard. (Dkt. 9, ¶¶ 26-32, 41). Plaintiff was not in his car and he was not present at the scene of the accident. (Pl. Dep. p. 70, ll. 11-13). Plaintiff's landlord and friend, Ms. Eleanor Roe Munzer, was the driver. (Pl. Dep. p. 19, ll. 11, 25). Plaintiff alleges that he owned the car with Ms. Munzer, which was registered in both of their names. (Pl. Dep. p. 21, l. 11 - p. 22, l. 25; p. 77, ll. 9-13; Dkt. 145, Exh. E(1)). Plaintiff alleges that the accident contributed to Ms. Munzer's July 8, 2003 death from cancer. (Pl. Dep. p. 29, ll. 2-5; p. 135, ll. 12-25).

Plaintiff alleges that Holder and other non-party Tampa police officers placed a GPS tracking device in his car in order to bring about the accident. (Dkt. 9, ¶ 20). Plaintiff alleges that Wells

monitored the movement of Plaintiff's car while it was moving north on Florida Avenue "via cell phone" with his co-conspirators. (Dkt. 9, ¶ 36). Meanwhile, Pizurro, Spahr and Porcaro "laid in wait at a predetermined location on Florida Avenue." *Id.* Plaintiff alleges that Spahr's car intentionally struck his car. (Dkt. 9, ¶ 30). Plaintiff's car was towed from the accident scene to a junkyard. (Dkt. 9, ¶ 41). Plaintiff signed a release on August 8, 2003, in which he discharged Spahr and her insurance company from any liability in return for $3,060.00.[2] (Dkt. 117-2).

Wells responded to the scene and prepared an incident report. The report states that Spahr "failed to observe a red traffic signal," and struck Plaintiff's car, which in turn struck Pizurro's car. (Dkt. 169, Exh. G.) The report lists two witnesses to the accident: Defendant Porcaro and a non-party, Harrison C. Hauswald. (Dkt. 169, Exh. G). There is no evidence that Knight or Holder responded to the scene or were involved in the investigation in any way. (Knight Aff. ¶¶ 5-6; Holder Aff. ¶¶ 13-15).

Plaintiff has not provided any facts supporting the alleged conspiracy among the defendants to stage the accident. His primary argument is that Holder, Knight, and Wells planned the accident in retaliation for a separate federal lawsuit Plaintiff filed against Holder on September 24, 2002 and a complaint he filed against Holder with the Florida Ethics Commission on April 17, 2003. (Dkt. 9, ¶¶ 28-29). Plaintiff alleges that the accident was meant to prevent Plaintiff from amending his complaint (Dkt. 9, ¶¶ 32). The lawsuit and ethics complaint were dismissed.[3]

---

[2] By virtue of the general release Plaintiff in favor of Defendant Spahr and her insurance company, which was authenticated by Plaintiff during his deposition, his claims against Spahr are barred. (Pl. Dep. P. 134. Lins 1-5). *See Marroni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So.2d 306, 314 (Fla. 2000).

[3] The lawsuit was dismissed on November 7, 2003 because the statute of limitations had run on Plaintiff's claims. (Case No. 8:02-cv-01729-T23EAJ, Dkt. 21). The ethics complaint was dismissed before the accident, on April 17, 2003, for lack of jurisdiction. (Holder Aff., Exh. A).

Plaintiff has not identified any evidence to buttress his assertion that Holder and other police officers placed a GPS tracking device in his car, nor has he produced evidence that Holder ever communicated with the other defendants. Plaintiff alleges that Holder "utilized his position and the resources of that position in an improper manner towards [Plaintiff]." (Pl. Dep. p. 36, ll. 19-21). Instead, Plaintiff repeatedly contends that he is allowed to "paint broad strokes" of the conspiracy and introduce evidence at trial. (Pl. Dep. p. 35, l.1 - p. 41, l. 9).

Plaintiff alleges that Knight and Wells met at their "place of employment" at "undetermined locations, undetermined at this time, which will be fully developed at trial." (Pl. Dep. p. 79, ll. 14-20). Knight and Wells, both FHP troopers, do not dispute that they know each other. (Knight Aff. ¶ 12; Wells Aff. ¶ 19). Plaintiff provides no more detail regarding the troopers' meeting, nor does he provide any information about their contact with the other defendants, despite repeated questioning at his deposition. (Pl. Dep. p. 81, l. 4 - p. 86, l.18; p. 96, l. 3 - p. 100, l. 20). Instead, Plaintiff alleged that after his driver's license was stolen in 2002, he received a call from an "Ellie Knight" from the Rhode Island Division of Motor Vehicles and "it's my understanding that she's related to Thomas Knight." (Pl. Dep. p. 88, l. 18 - p. 89, l. 9). Plaintiff further alleges that "she could have conceivably picked up the phone and had a conversation with her relative, Thomas Knight." (Pl. Dep. p. 89, ll. 22-25).

Plaintiff also alleges that he remembers hearing as a child growing up in Rhode Island that Porcaro, a witness to the accident, is related to Ellie Knight. (Pl. Dep. p. 90, ll. 13-22; Dkt. 145, Pl. Aff. ¶ 7-8).[4] Plaintiff also alleges that the other witness, Mr. Hauswald, "looks more and more every

---

[4] Plaintiff alleges that he skipped school with Phillip Porcaro, who is related to Defendant Porcaro. (Pl. Dep. p. 91, ll. 4-5).

4

day like he's a dead person . . . . So I don't know how Trooper Wells could've taken a statement from him. (Pl. Dep. p. 132, ll. 10-12).

Plaintiff has cited no evidence of communication between Spahr and the other defendants, nor has he produced any evidence that she intentionally struck his car. (Pl Dep., p. 112, l. 3 - p. 128, l. 13). Spahr, who is from Tennessee, was vacationing in Florida at the time of the accident, and maintains that the accident was not intentional. (Spahr Aff. ¶¶ 2, 6, 12). Plaintiff alleges that based on Tennessee property tax records, an insurance adjustor working for Spahr's company "lives almost next door" to relatives of the former Tampa Police Department spokesperson Stephen Cole. (Dkt. 143, Pl. Aff. ¶ 12). Plaintiff also alleges that the adjustor for Spahr's accident is a FHP deputy, based on an article about a FHP deputy with the same name as the adjustor listed on Spahr's appraisal report. (Dkt. 169, Exhs. H, I). Finally, Plaintiff alleges that because Spahr listed a "Charles Mallonee" as a passenger in the car at the time of the accident in her responses to his discovery requests, and the incident report does not contain Mr. Mallonee's name, that this "suggest[s] hit and run and is in genuine material dispute as to who was the driver of the car." (Dkt. 148, Pl. Aff. ¶ 6, Exh. A).

Plaintiff alleges that Porcaro contacted Pizurro "with technology, that's kind of . . . I can't -- I can't -- I cannot with any certainty say -- you know, confirm or deny the actual, was it telephone, was it e-mail." (Pl. Dep. p. 150, ll. 20-25). Plaintiff produces no additional details of this alleged contact. Plaintiff alleges that Pizurro's role in the accident "was an act of vigilante action against plaintiff as result affiliation with members of a Detroit Michigan area family bearing ties to the plaintiffs alleged attempted sexual battery victim." (Dkt. 9 ¶ 37). In his deposition, Plaintiff further states: "I have discovered that there is a closeness of proximity to residential addresses between

Pizurro and Pace family members in the Detroit, Michigan area." (Pl. Dep. p. 153, ll. 6-9). Plaintiff also contends that Pizurro "is law enforcement" because "I believe that I recall the name Pizzuro on a name tag of an employee at the Florida Department of Motor Vehicles on Nebraska Avenue, and I believe that that's one in the same, or a relative of hers." (Pl. Dep. p. 159, ll. 13-24). Finally, Plaintiff alleges that Pizurro "was married to a --- a man who owns an auto parts shop on Nebraska Avenue, not far from the Division of Motor Vehicles where I believe that she works or a relative works, but that they own this -- this car [sic] that caters specifically to exotic cars, foreign cars." Plaintiff further alleges that he is "aware" that Holder owns a corvette and "there ain't that many places in the Tampa Bay area to buy parts." (Pl. Dep. 166, ll. 5-24).

Pizzuro avers in her affidavit that she has no connection to the Pace family or to Detroit, has not worked at the DMV and has no relatives who have worked at the DMV, and has not been married to a person who owns an auto parts shop on Nebraska Avenue. (Pizzuro Aff. ¶¶ 2, 3, 14-15). Although Plaintiff submits an affidavit in which he "objects" to these statements, he has produced no evidence that disputes Pizzuro's statements. (Dkt. 114, Pl. Aff.).

Plaintiff's own motion for summary judgment and responses to the Defendants' motions for summary judgment make a host of additional rambling allegations about alleged relationships between non-parties to this suit, which, like the above allegations, appear to be based solely on Plaintiff's surmise and conjecture derived from computerized public records searches. (*See e.g.* Dkts. 128, 129, 142, 143, 147, 148, 169).[5] As additional evidence of the conspiracy, Plaintiff alleges

---

[5] For example, an excerpt from Plaintiff's affidavit in support of his motion for summary judgment states:
6. That at the time of filing the September 24, 2002 litigation Dick Greco was Mayor of the City of Tampa.
7. That on June 12, 2003 while plaintiff 2002 1983 Civil right Complaint was pending in the court against defendants Holder and the City of Tampa and others there occurred a automobile crash involving plaintiffs automobile.

that he was ordered off the bus system for thirty days on March 18, 2003 by a Tampa Police Officer. (Dkt. 143, Pl. Aff. ¶ 5; Exh C). Plaintiff also alleges that a City of Tampa Wastewater work crew "dug a trench in front of plaintiffs home and for the next eight days studied the movement of both the plaintiffs and Eleanor Roe Munzer." (Dkt. 143, Pl. Aff. ¶ 6).

Pursuant to the Court's Order on the Defendant's motions to dismiss (Dkt. 84), the following claims remain outstanding against the remaining Defendants: 1) retaliation and conspiracy to retaliate against him based on his lawful exercise of his First Amendment right to redress grievances (Count II); 2) violation of and conspiracy to violate his Fourth Amendment rights based on the unlawful seizure of his car (Count III); and 3) deprivation of and conspiracy to deprive him of his due process rights guaranteed by the Fourteenth Amendment (Count IV). Upon review of the parties' submissions, Defendants' motions for summary judgment are granted as to all claims.

## *Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the

---

8. That Hillsborough County Clerk of the Court Official Records evidence at OR Book No. 299 PG 260 give evidence of the marriage of Brenda Denise Greco to Larry Stanley Parker.
9. That Hillsborough County Clerk of the Cour Office Records evidence at OR Book No. 670 PG 221 the marriage of Larry Stanley Parker to Joan Pizurro. (Dkt. 128).

nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

## *Discussion*

### *1. Section 1983*

To sustain a cause of action pursuant to 42 U.S.C. § 1983, a plaintiff must establish that: (1) he or she suffered a deprivation of rights, privileges or immunities secured by the Constitution and/or laws of the United States and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (*quoting United States v. Classic*, 313 U.S. 299, 326 (1941)).

## 2. *First Amendment Retaliation Claim*

In a case alleging police retaliation for the exercise of First Amendment rights, a plaintiff must establish that: (1) his speech or act was constitutionally protected; (2) defendants engaged in an adverse action that would likely deter "a person of ordinary firmness" from the exercise of First Amendment rights; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). The Court will assume for purposes of the motions for summary judgment that Plaintiff engaged in constitutionally protected activity by filing a lawsuit and ethics complaint against former police chief Holder. *See Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (prisoner's filing of lawsuits and administrative grievances was protected expression).

Nevertheless, Plaintiff has failed to produce evidence that there was an adverse action taken by any of the state actors. The undisputed evidence establishes that the accident was caused by Spahr, a private citizen, and involved another private citizen, Pizurro. Neither Knight nor Holder responded to the accident or were involved in the investigation of the accident. Although Wells responded to the accident, there is no evidence that he ever communicated "via cell phone" with the other defendants or that he participated in the events causing the accident. Plaintiff has produced no evidence concerning the tracking device allegedly placed in his car by the non-party officers. As such, there is simply no evidence that the state actors took any adverse action against him. *Cf. Bennett*, 423 F.3d at 1254-55.

In addition, Plaintiff has utterly failed to show a causal connection between the accident and the filing of his earlier lawsuit. To do so, he must point to evidence "sufficient to permit a reasonable jury to find that his protected speech was a substantial or motivating factor" behind the

9

accident. *Gattis v. Brice*, 136 F.3d 724, 726 (11th Cir. 1998). Although the Court will assume for purposes of summary judgment that Holder was aware of the lawsuit filed against him,[6] as noted, Plaintiff has offered no evidence that Holder was involved with the accident in any way. As to Wells and Knight, Plaintiff has produced no evidence that the troopers knew of the complaint against Holder or that they retaliated against Plaintiff for his complaint against Holder. To the contrary, both troopers' aver in their affidavits that they were not aware of the lawsuits and grievances and had not spoken to each other or to Holder about Plaintiff. (Knight Aff. ¶¶ 11-12; Wells Aff. ¶¶ 18-19). *See Farrow v. West*, 320 F.3d 1235, 1248-49 (11th Cir. 2003) (in prisoner retaliation case, summary judgment was proper where plaintiff produced no evidence rebutting defendant's assertion that she had no knowledge of plaintiff's complaints).

In summary, Plaintiff has failed to produce any direct or circumstantial evidence showing that the state actors took any adverse action against him. He has similarly failed to tender any evidence that there was a causal connection between the accident and his filing of the lawsuit and grievance against Holder. Accordingly, Defendants' motions for summary judgment are granted as to Plaintiff's 42 U.S.C. § 1983 claim alleging a First Amendment violation.

### 3. *Fourth Amendment Claim*

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. A "seizure" of a vehicle occurs when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original). Plaintiff alleges that the accident and towing of the car constitute an

---

[6] Defendant Holder states that he was not aware of the ethics complaint prior to this lawsuit. (Holder Aff. ¶ 11). Plaintiff has produced no evidence countering this assertion.

unlawful seizure. As explained above, however, there is no evidence that the governmental actors caused the accident, by proxy or otherwise.

Assuming that the removal of Plaintiff's car by the tow truck constituted a seizure,[7] there is no showing that the removal was "unreasonable." *Id.* at 599. Plaintiff has not attempted to refute Wells' statement that the car was towed because Ms. Munzer was unable to drive and the car itself was no longer functional. (Wells Aff. ¶ 11). *See also Cady v. Dombrowski*, 413 U.S. 433, 447 (1973) (noting that there was no suggestion that officers' having accident car towed "was unwarranted either in terms of state law or sound police procedure"); *Lindsey v. Storey*, 936 F.2d 554, 558 n.3 (11th Cir. 1991) (noting that impound of plaintiff's car was proper where the driver was arrested and the other passengers did not have insurance or a driver's license); Fla. Stat. § 316.061 (law enforcement may remove vehicles incapacitated as a result of an accident).

Plaintiff has failed to demonstrate that he has any evidence that his vehicle was subject to an unreasonable seizure in violation of the Fourth Amendment. Defendants' motions for summary judgment are therefore granted on Plaintiff's 42 U.S.C. § 1983 claim alleging violation of the Fourth Amendment.

### 4. *Due Process Claim*

The Fourteenth Amendment to the United States Constitution provides that no person shall be deprived of life, liberty, or property, without due process of law. U.S. CONST. amend. XIV § 1. In evaluating a procedural due process claim, three factors must be weighed: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest

---

[7] Defendant Wells would be the only relevant party to this claim because there is no allegation that any other defendant ordered or sanctioned the towing of Plaintiff's vehicle.

through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The temporary deprivation of an automobile that is impounded as well as the fees paid to retrieve it are valid private interests.[8] *City of Los Angeles v. David*, 538 U.S. 715, 716 (2003). However, Plaintiff has failed to establish that the process that he received following the towing of his vehicle was in any way deficient. Federal due process is not violated when a party has available a meaningful post-deprivation remedy. *Lindsey*, 936 F.2d at 561; *City of Los Angeles*, 538 U.S. at 716 (upholding the 27-day delay in holding a hearing on plaintiff's request for a refund of his towing expenses). Plaintiff has presented no evidence concerning the events following the towing of his vehicle, let alone evidence demonstrating that the procedures did not afford him meaningful relief. Defendants' motions for summary judgment on Plaintiff's 42 U.S.C. § 1983 claim alleging violation of the Fourteenth Amendment are therefore granted.

### 5. Conspiracy and the Private Defendants

Private defendants may be held liable under § 1983 "if they act in concert with the state officials in depriving a plaintiff of constitutional rights." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990). To state a *prima facie* case for conspiracy to violate civil rights under § 1983, a plaintiff must show: 1) a violation of a constitutional right; and 2) an agreement among the defendants to violate that right. *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th

---

[8] Plaintiff stated during his deposition that he retrieved his car at his own expense from the junkyard. (Pl. Dep. p. 146, ll. 24-25).

Cir. 1998). "The plaintiff does not have to produce a 'smoking gun' to establish the 'understanding' or 'willful participation' required to show a conspiracy, but must show *some evidence* of agreement between the defendants." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (internal citations omitted and emphasis added).

Because there is no underlying constitutional violation, the private defendants in this case cannot be found to have engaged in a conspiracy to commit a constitutional violation. *Id.* Moreover, Plaintiff has produced no evidence whatsoever that Pizurro, Spahr, or Porcaro ever engaged in a conspiracy with each other or with any of the other defendants. The facts, as set forth above, contain no evidence that any of the defendants ever communicated with or formed an agreement with any other defendant. Because the linchpin of a conspiracy is an agreement, Defendants' "extreme lack of communication" is fatal to Plaintiff's claims. *Bailey v. Bd. of County Com'rs of Alachua County*, 956 F.2d 1112, 1121-22 (11th Cir. 1992) (affirming final judgments for defendants where plaintiff produced no evidence of a conspiracy). Summary judgment is accordingly warranted as to each of Plaintiffs' conspiracy claims. *Fullman v. Graddick*, 739 F.2d 553, 561-562 (11th Cir. 1984) (affirming summary judgment for plaintiff's conspiracy claims that were vague and conclusory).

Moreover, as to Defendant Spahr, Plaintiff signed a release barring "*any and all* claims, demands, damages including loss of use, actions, causes of action, or suits *of any kind or nature whatsoever*, past, or present resulting from damages to property, known and unknown, to me(us) which have resulted or may, in the future develop from an accident which occurred on or about June 12, 2003 in Tampa, FL." (Dkt. 117, Exh. A). The broad language of this general release and its references to future claims arising from the accident preclude this suit against Defendant Spahr. *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So. 2d 306, 314 (Fla. 2000). Plaintiff

authenticated this release during his deposition. (Pl. Dep. p. 134 ll. 1-5). Plaintiff's claim against Spahr is accordingly barred by the general release.

Finally, given the frivolous, unsubstantiated claims against these private defendants, the Court finds that Plaintiff has not and cannot state a cause of action against Defendant Porcaro and *sua sponte* dismisses this case against him. There is no reason to continue this action against any defendant, including Porcaro, even though he has not responded the to the Amended Complaint. Plaintiff has not and cannot establish that he is entitled to any relief against Porcaro because no constitutional violation has been shown, and furthermore, no defendants remain with whom Porcaro could have conspired. *See Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003) (affirming dismissal of conspiracy claim against remaining defendant in conspiracy action under 42 U.S.C. § 1985 where plaintiff could not state claim against other defendants).

### 6. Rule 11 Sanctions

Defendant Pizurro has moved for sanctions against Plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure. In the Court's discretion, Rule 11 sanctions may be imposed against an attorney or party who files a pleading that: (1) has no reasonable legal basis; (2) has no reasonable factual basis; or (3) is filed for an improper purpose. *Harris v. Heinrich*, 919 F.2d 1515, 1516 (11th Cir. 1990). A plaintiff's status as *pro se* must be taken into account when determining whether the pleading has a "reasonable" basis. *Id.*

Plaintiff has leveled serious, unsubstantiated accusations against the Defendants. He has failed to produce even a scintilla of evidence that any of the defendants engaged in the alleged conduct. Rather, Plaintiff bases this two-year long litigation on wildly speculative and wholly unsubstantiated conspiracy theories. Due to Plaintiff's demonstrated history of vexatious,

burdensome and harassing litigation, this Court entered a *Martin-Trigona* injunction on July 7, 2005, enjoining Plaintiff from filing future lawsuits without first securing leave of the court. (Dkt. 83). The Court finds that this measure will serve to deter frivolous filings in the future and that an award of monetary sanctions will serve no additional purpose. Defendant Pizurro's motion for sanctions is accordingly denied.

Upon consideration, it is

**ORDERED AND ADJUDGED** that

1) Defendants Knight's and Wells' Motion for Summary Judgment (Dkt. 118) is **GRANTED**;

2) Defendant Holder's Motion for Summary Judgment (Dkt. 120) is **GRANTED**;

3) Defendant Pizzuro's Motion for Summary Judgment (Dkt. 123) is **GRANTED**;

4) Defendant Spahr's Motion for Summary Judgment (dkt. 124) is **GRANTED**;

5) Plaintiff's Motion for Summary Judgment (Dkt. 129) is **DENIED**;

6) Defendant Pizzuro's Motion for Rule 11 Sanctions (Dkt. 153) is **DENIED**;

7) This action is **DISMISSED** with prejudice as to Defendant Louis Porcaro;

8) All other pending motions are **DENIED** as moot;

8) The Clerk is directed to close the case.

**DONE AND ORDERED** in chambers this 24TH day of October 2006.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
*Pro se* Plaintiff
Counsel of Record